SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State in the Interest of A.B. (A-74-12) (072873)

**Argued March 18, 2014 -- Decided September 24, 2014**

**Albin, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the family court abused its discretion by entering a discovery order allowing the accused, his attorney, and his investigator to inspect and photograph specified areas of the alleged victim's home for no more than thirty minutes in the presence of a prosecutor's investigator.

In September 2011, A.B., then seventeen years old, was charged in a juvenile complaint with offenses that would constitute first-degree aggravated sexual assault and third-degree endangering the welfare of a child if committed by an adult. The named victim is A.B.'s six-year-old cousin, N.A. The offenses allegedly occurred during a three-week period when A.B. was staying with his aunt and uncle. The prosecutor's investigators photographed N.A.'s home and cut a piece of rug for forensic testing. Defense counsel requested to inspect the home to understand the dimensions and relative locations of the rooms where alleged sexual acts occurred and to take pictures. When the prosecutor objected, A.B. filed a motion to secure an inspection order.

At a hearing on the motion to inspect, defense counsel insisted that he had to visit the scene of the crime to prepare his case. The prosecutor opposed the motion, stating that the photographs accurately depicted the relevant areas of the house and arguing that the "victim's family should not have to vacate their home on the hope . . . that the visit might reveal something useful to the case." The family court entered an order allowing defense counsel "to inspect the victim's room and [A.B.]'s sleeping area with an investigator and [A.B.] in the company of an investigator from the Prosecutor's Office." The order restricted the inspection to "no more than 30 minutes," excluded A.B.'s parents from participating, required that "the victim's family" agree to the date and time of the visit, and allowed for the family to "be in another part of the house or outside of the house" during the visit.

The State filed a motion for reconsideration supported by a certification from N.A.'s mother, which stated that her family would be traumatized if A.B. were allowed in the home. The State asserted that the order violated the Victim's Rights Amendment (VRA), the Crime Victim's Bill of Rights (CVBR), and case law requiring a heightened and specific showing of relevance to justify invading a victim's privacy rights. Defense counsel argued that inspection of the alleged crime scene was fundamental to his preparation and would allow him a spatial understanding of the home's layout and an opportunity to take photographs useful to the defense. The court denied reconsideration, explaining that the order took into account the privacy concerns of the victim's family and that defense counsel had the right to inspect "the scene of the crime with [A.B.] . . . so he can better prepare the case."

The Appellate Division denied the State's motion for leave to appeal. This Court granted the State's interlocutory appeal, summarily remanded to the Appellate Division for consideration on the merits, and stayed the discovery pending a final decision. The Appellate Division then affirmed the inspection order, finding that the family court "carefully considered the pertinent facts and balanced the competing interest of defendant's due process rights to prepare and present a defense against the right of the victim and her family to the privacy and security of their own home." This Court granted the State's motion for leave to appeal. State ex rel. A.B., 214 N.J. 233 (2013).

**HELD**: The family court did not abuse its discretion by permitting the defendant and his attorney to inspect and photograph specified areas of the alleged victim's home. Where, as here, the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted.

1

1. In a criminal case, the accused is generally "entitled to broad discovery." State v. D.R.H., 127 N.J. 249, 256 (1992). Rule 3:13-3(b) grants automatic access to a wide range of relevant evidence, including "buildings or places which are within the possession, custody or control of the prosecutor." Courts also may order discovery "when justice so requires," weighing whether the "evidence sought could contribute to an adequate defense of the accused person" and "cannot practicably be obtained from other sources" against whether there is a "likelihood of subjecting witnesses to intimidation, unnecessary annoyance, harassment or embarrassment." See State ex rel. W.C., 85 N.J. 218, 221, 227 & n.1 (1981) (citation and internal quotation marks omitted). When a defendant seeks discovery outside of the categories permitted by the court rules, he bears the burden of establishing need. (pp. 13-15)

2. Because N.A.'s home is not "within the possession, custody or control of the prosecutor," R. 3:13-3(b)(1)(E), A.B.'s request to inspect the house does not fall within the scope of automatic discovery, and A.B. must show that the inspection is justified. The Court has addressed the showing a defendant must make when a discovery demand involves a witness's compulsory viewing of a line-up or a psychological or physical examination of an alleged victim or witness. The burden necessarily increases in direct proportion to the nature and extent of the intrusion. When intrusive discovery is sought, courts must be careful that the process does not subject witnesses, particularly alleged victims, "to intimidation, harassment, or embarrassment." D.R.H., supra, 127 N.J. at 256. (pp. 16-18)

3. In a discovery proceeding "[a] victim of a crime shall be treated with fairness, compassion and respect," N.J. Const. art. I, ¶ 22, and a witness has the right "[t]o be free from intimidation, harassment or abuse by any person including the defendant or [his attorney]," N.J.S.A. 52:4B-36(c). But the rights of the accused and alleged victims and witnesses are not mutually exclusive. The rights reflected in the VRA and CVBR do not diminish those rights possessed by the accused facing a criminal prosecution. (pp. 18-19)

4. Although New Jersey courts have not addressed the issue of allowing a defendant to inspect a crime victim's home, other jurisdictions generally require only a threshold showing of relevance and materiality, consistent with W.C., supra, 85 N.J. 218. When courts have denied access to photograph or inspect a crime scene, it has generally been because the defendant failed to show sufficient, or any, justification. Several of these courts suggested that had the defense made a showing of relevance and need, the inspection would have been permissible. (pp. 19-21)

5. Unlike psychiatric and physical examinations, which are extraordinary intrusions into an alleged victim's mind and body, a defense attorney's visit to the crime scene is a rather ordinary undertaking, and in some circumstances, might constitute a professional obligation. When a crime scene is the victim's home, significant concerns arise. Any discovery request that has as its objective causing intimidation, harassment, or abuse of an alleged victim is wholly illegitimate and must be denied. However, when the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted. This test is similar to the one adopted in W.C., supra, 85 N.J. at 226. A defendant must show a reasonable basis to believe that a home inspection of limited duration will yield relevant evidence. (pp. 22-25)

6. In this case, A.B. posits that it was not possible for the acts alleged by N.A. to have occurred undetected by any of the adults in N.A.'s home. A.B.'s attorney asserts that it is essential for him to understand the dimensional layout of the rooms, to view firsthand the sightlines, and to take photographs helpful to the defense. In considering the motion to inspect N.A.'s home, the trial court weighed the competing interests: A.B.'s need for access to the scene to prepare a defense and the family's desire not to suffer the traumatizing effect of A.B.'s presence in their home, with his attorney, "look[ing] for things they can use against [them] in Court." The family court carefully crafted an order that took into account the parties' concerns. In so doing, the family court did not abuse its discretion and N.A.'s family must comply with the order. (pp. 25-28)

The judgment of the Appellate Division is **AFFIRMED**, and the matter is **REMANDED** to the family court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE ALBIN's opinion. JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY

IN THE INTEREST OF

A.B.

Argued March 18, 2014 – Decided September 24, 2014

On appeal from the Superior Court, Appellate
Division.

Joie D. Piderit, Acting Assistant
Prosecutor, Special Deputy Attorney General,
argued the cause for appellant State of New
Jersey (Andrew C. Carey, Acting Middlesex
County Prosecutor, attorney).

Jack Venturi argued the cause for respondent
A.B. (Mr. Venturi, attorney; Mr. Venturi and
Andrew Tealer, on the brief).

Deborah C. Bartolomey, Deputy Attorney
General, argued the cause for amicus curiae
Attorney General of New Jersey (John J.
Hoffman, Acting Attorney General, attorney).

Jeffrey S. Mandel argued the cause for
amicus curiae Association of Criminal
Defense Lawyers of New Jersey (Cutolo
Mandel, attorneys; Mr. Mandel and Andrew
Stein, on the brief).


JUSTICE ALBIN delivered the opinion of the Court.

In this appeal, the State challenges an order of the family

court allowing seventeen-year-old A.B. and his attorney to

conduct a thirty-minute inspection of a home where the juvenile

1

is alleged to have committed sexual offenses against his six-year-old cousin, N.A.

The juvenile moved for the inspection after the prosecutor's investigators had photographed the home and cut a piece of rug from it for forensic testing. The juvenile's attorney gave specific and particularized reasons for the need to visit and photograph the home in preparation for A.B.'s defense. The prosecutor opposed the juvenile's motion on the ground that the defense inspection of the home -- the crime scene -- constituted "intimidation, harassment or abuse" in violation of the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-36(c).

On interlocutory review, the Appellate Division upheld the inspection order, finding that the family court had exercised its sound discretion. The order provided that the inspection be conducted at a reasonable time and in the presence of a prosecutor's investigator and with N.A.'s parents present in the home, if they wished.

We now affirm. The right to the effective assistance of counsel in a criminal proceeding includes the right to conduct a reasonable investigation to prepare a defense. The right of the accused to a fair trial, and the right of a purported victim and her family to privacy must be balanced. The family court found that A.B. made a sufficient showing of need to inspect and

photograph N.A.'s home.  The court issued the inspection order only after carefully weighing the juvenile's fair-trial rights and N.A.'s privacy interests and imposing reasonable time and manner restrictions.  We conclude that the family court did not abuse its discretion.

I.

A.

In September 2011, A.B., then seventeen years old, was charged in a juvenile complaint with offenses that would constitute first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), if committed by an adult.  The victim named in the complaint is A.B.'s six-year-old cousin, N.A.  The offenses allegedly occurred during a three-week period when A.B. was staying with his aunt and uncle in Old Bridge in Middlesex County.

The genesis of this appeal is defense counsel's letter to the prosecutor requesting to inspect the scene of the alleged crime -- N.A.'s home -- for the purpose of gaining an understanding of the dimensions and relative locations of the rooms where alleged sexual acts occurred and to take pictures for preparation and use at trial.  The prosecutor responded that he would not agree to such an inspection without a court order. A.B. then filed a motion to secure an inspection order.  The

3

record before the family court included testimony from N.A.'s mother and an investigator from the Middlesex County Prosecutor's Office.[1]  We now review that record.[2]

B.

On July 2, 2011, A.B., then seventeen years old, began what would be a three-week stay at the Old Bridge home of his aunt and uncle, Karen and George.  They resided there with their six-year-old daughter, N.A., who is A.B.'s cousin.  A.B. lived in Connecticut with his mother, Nancy, who did not accompany him on this visit.  Nancy and Karen are sisters.  During his stay, A.B. slept on a couch in the den, and N.A. slept in her own room.

On the Fourth of July, Karen and George hosted a cookout attended by Karen's brother from Connecticut and her sister and brother-in-law from Texas.  At this family gathering, nothing seemed amiss, and the weeks that followed were uneventful.

On Sunday morning, July 24, as Karen passed the bathroom, her daughter said, "Mommy, my peepee hurts."  When Karen asked why, N.A. responded, "Because [A.B.] rubbed me down there."  Karen observed that her daughter's genital area was red and

---

[1] The testimony was taken during an N.J.R.E. 104 hearing to determine the admissibility of out-of-court statements made by by N.A. to her mother and the investigator.

[2] To protect their privacy, the juvenile defendant and juvenile complainant are identified by their initials, and other family members are identified by fictitious names.

4

irritated.  Karen awakened her husband, a physician, who then examined his daughter.  He too noticed redness but saw no evidence of penetration.  Karen and George then went to the den to confront A.B., who was asleep.  They awoke A.B., and he denied improperly touching his cousin, saying, "I wouldn't do that."  Karen had left the children home alone for two hours the previous evening and presumed that the sexual contact occurred then.

Karen told A.B. that she would take him home later that day.  Karen spoke with her sister Nancy, who apparently was made aware of the accusation by her son.  The sisters agreed to meet at a McDonald's in Connecticut with the children present.

At the McDonald's, Karen allowed her sister to talk alone with N.A.  Nancy video-recorded her conversation with N.A., during which N.A. admitted to "massaging" herself.  At some point, Karen approached her daughter, and N.A. said to her mother, "I did it to myself."  Karen asked if she was sure, and N.A. said, "yes."  Karen further questioned her daughter, who replied, "I'm red-handed[.]  I did it to myself.  I can't help it.  I just like to touch it."  To further vouch for her honesty, N.A. put her hand in the air and said, "I pinky swear." In her testimony, Karen admitted that one time she caught her daughter rubbing her private parts in the bathtub.

Karen was distraught and yelled at her daughter for having lied. But Karen admitted that she was not "truly convinced" that her nephew had not abused her daughter. Karen returned home and several days later broached the subject again with her daughter. While the two sat on the sofa, Karen asked N.A. whether she told the truth to her aunt. She assured her daughter, "you will not be in trouble if you . . . lied about it. You know, I love you no matter what." According to Karen, N.A. then related an incident in which A.B. offered her playtime with his iPod if she would suck his "ding-dong." When N.A. did so, "some milky white stuff came out," and "she spit it out and brushed her teeth." N.A. explained that she did not tell her aunt Nancy the truth because she did not want to get in trouble.

Karen suspected that the oral-sex incident must have happened during the Fourth of July cookout because of an unusual remark made by N.A. that day. Mid-day, N.A. said to Karen, "Mommy, I brushed my teeth," when Karen typically had to remind her daughter to brush. Later, during a video-taped interview with a prosecutor's investigator, N.A. also indicated that the sexual incident with A.B. occurred during the cookout. Investigators cut out a piece of the rug in the area where N.A. claimed to have spit out the semen, but the forensic test results were negative. Investigators took forty-one photographs of the home.

6

II.

A.

At a hearing on the motion to inspect, defense counsel insisted that he had to visit "the scene of the crime" to prepare his case and that he was not adverse to a thirty-minute time limit or to excluding A.B.'s parents from participating. In opposing the motion, the prosecutor purported that the photographs provided to the defense in discovery accurately depicted the relevant areas of the house and asserted that the "victim's family should not have to vacate their home on the hope . . . that the visit might reveal something useful to the case." The family court entered an order allowing "the defense attorney to inspect the victim's room and juvenile's sleeping area with an investigator and the juvenile in the company of an investigator from the Prosecutor's Office." The order restricted the inspection to "no more than 30 minutes," excluded the juvenile's parents from participating, required that "the victim's family" agree to the date and time of the visit, and allowed for the family to "be in another part of the house or outside of the house" during the visit.

The State filed a motion for reconsideration. In that motion, Karen certified that her family would be traumatized if her nephew were allowed in her home and that she did "not feel comfortable opening [her] home to the defense so that they can

7

look around for things they can use against us in Court." The State asserted that the order violated the Victim's Rights Amendment, the Crime Victim's Bill of Rights, and case law requiring a heightened and specific showing of relevance to justify the invasion of a victim's privacy rights. Counsel for A.B. argued that inspection of the home where the alleged crime occurred was a fundamental part of his preparation and would allow him a spatial understanding of the layout of the rooms and an opportunity to take photographs useful to the defense.

In denying the reconsideration motion, the court explained that the order was crafted to take into account the privacy concerns of Karen's family. The court further explained that the purpose of the order was "to ensure a fair playing field." The court emphasized that defense counsel had the right to inspect "the scene of the crime with the juvenile . . . so he can better prepare the case."

B.

The Appellate Division denied the State's motion for leave to appeal. We granted the State's interlocutory appeal and summarily remanded to the Appellate Division for consideration on the merits. We stayed the discovery pending a final decision.

The Appellate Division affirmed the family court's inspection order. The panel found that the court "carefully

8

considered the pertinent facts and balanced the competing interest of defendant's due process rights to prepare and present a defense against the right of the victim and her family to the privacy and security of their own home." The panel noted that the case "turn[s] on the credibility of the witnesses" and whether the juvenile could have committed the alleged sexual abuse of his cousin "without detection." The panel determined that the family court "fully comprehended the invasion of the victim's family's privacy and security entailed by allowing defendant and his defense team access to their home." The panel did not second-guess the court's judgment that the home inspection "was relevant to [A.B.'s] claims of innocence and could produce exculpatory evidence" and that the defense should not be limited to "the photographs taken by the State." Finally, the panel concluded that the family court "soundly exercised its discretion" by crafting an order that limited the "intrusion on the victim's family" to no more than what was "absolutely necessary to accommodate defendant's due process rights."

We granted the State's motion for leave to appeal. State ex rel. A.B., 214 N.J. 233 (2013). We also granted the motions of the Attorney General and the Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as amici curiae.

III.

A.

The State argues that the court's discovery order permitting defense counsel access to the home of the victim's family constitutes an invasion of privacy and a violation of the Fourth Amendment's bar against unreasonable searches, the Victim's Rights Amendment (VRA), N.J. Const. art. I, ¶ 22, and the Crime Victim's Bill of Rights (CVBR). The State posits that defense counsel's "bare and unsubstantiated claim" of a need to inspect N.A.'s home to prepare for trial does not meet the necessary relevancy standard. It maintains that the order is not supported by the discovery rule, R. 3:13-3, the controlling law in this state, or precedents in other jurisdictions. In the State's view, the court's order "went too far in accommodating the juvenile's request," and the defense should have found satisfactory the photographs of the home provided by the prosecutor.

B.

The Attorney General, as amicus curiae, urges this Court to rule that a discovery order to inspect an alleged victim's home, even a home that is the scene of the alleged crime, shall not issue in the absence of the accused demonstrating a substantial need grounded in the evidence. Although acknowledging that "New Jersey courts have the inherent power to order discovery when justice requires," the Attorney General insists that here the

10

court "granted the order with no showing of the juvenile's need to enter and inspect the house or that his need outweighed the basic rights of the victim and her family."  The Attorney General submits that, although the order raised Fourth Amendment concerns, the court did not demand a satisfactory explanation and allowed a fishing expedition.

C.

A.B. asks this Court to affirm the Appellate Division's upholding of the discovery order.  A.B. contends that the order to inspect the home -- the scene of an alleged crime -- is necessary for him to have a "meaningful opportunity to present a complete defense," (citation and internal quotation marks omitted), a right guaranteed by the Federal and State Constitutions.  A.B. emphasizes that he is presumed to be innocent and that if adjudicated delinquent he faces the prospect of confinement, classification as a sex offender, notification and registration requirements under Megan's Law, and other adverse consequences.  He claims that his counsel requires an understanding of the spatial relationships and configuration of rooms, where certain conduct was observed and not observed, and that this understanding is critical to the defense.  He also claims that the photographs provided by the State are inadequate for his purposes.  He notes that the State had access to the house and that he would be disadvantaged if he

11

were not permitted to inspect the residence. A.B., moreover, disputes the State's position that the case law of other jurisdictions is not supportive of his right of access. Last, A.B. reasons that any negative impact on N.A. and her family would be minimal because the parents can choose to be absent during the inspection, and N.A. does not have to be told that it occurred.

## D.

The ACDL, as amicus curiae, submits that the fair-trial rights of the accused and rights of victims and owners of private property where a crime has occurred can be protected through an inspection order that imposes "reasonable time, place, and manner restrictions." According to the ACDL, "[i]f a defendant demonstrates that it is reasonably probable that exculpatory evidence exists at a crime scene or that access will assist with trial preparation," a court should grant a discovery order identifying the precise area to be inspected and specifying the time allotted for the inspection. The ACDL believes that the burden rests with the objector to "specifically identify compelling reasons for denying access that cannot be alleviated through a carefully crafted order."

## IV.

### A.

12

We must decide whether the family court abused its discretion by entering a discovery order allowing the accused, his attorney, and his investigator to inspect and photograph specified areas of the alleged victim's home for no more than thirty minutes in the presence of a prosecutor's investigator. The issue presents a balancing of the right of the accused to a fair trial and the right of an alleged victim and her family to privacy in their home.

Appellate review of a trial court's discovery order is governed by the abuse of discretion standard. In re Subpoena Duces Tecum on Custodian of Records, 214 N.J. 147, 162 (2013) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Thus, an appellate court should generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not "based on a mistaken understanding of the applicable law." Pomerantz Paper, supra, 207 N.J. at 371 (citation and internal quotation marks omitted); see generally Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (holding that "abuse of discretion" "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis" (citation and internal quotation marks omitted)). In construing the meaning of a statute, court rule, or case law, "our review is de novo, and therefore we owe no

13

deference to the trial court's or Appellate Division's legal conclusions." Farmers Mut. Fire Ins. Co. v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013); Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 253 (2013).

B.

Our courts do not countenance trial by surprise. The accused in a criminal case is generally "entitled to broad discovery." State v. D.R.H., 127 N.J. 249, 256 (1992). "To advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment," and our court rules implement that approach. State v. Scoles, 214 N.J. 236, 252 (2013). Rule 3:13-3(b) grants a defendant automatic access to a wide range of relevant evidence, including "buildings or places which are within the possession, custody or control of the prosecutor," R. 3:13-3(b)(1)(E).

In addition to the automatic discovery provision of Rule 3:13-3(b), our courts have "the inherent power to order discovery when justice so requires." State ex rel. W.C., 85 N.J. 218, 221 (1981). "Whether discovery should be expanded involves exercising judicial discretion . . . [by] balancing the beneficial effects of discovery against its disadvantages." Id. at 224. In exercising its discretion, a court should weigh whether the "evidence sought could contribute to an adequate

14

defense of the accused person" and "cannot practicably be obtained from other sources" against whether there is a "likelihood of subjecting witnesses to intimidation, unnecessary annoyance, harassment or embarrassment." See id. at 227 & n.1 (citation and internal quotation marks omitted). When a defendant seeks discovery outside of the categories permitted by our court rules, he bears the burden of establishing need. Id. at 228.

We must be mindful that the purpose of pretrial discovery is to ensure a fair trial. A criminal trial where the defendant does not have "access to the raw materials integral to the building of an effective defense" is fundamentally unfair. Ake v. Oklahoma, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093, 84 L. Ed. 2d 53, 62 (1985).

Visiting the scene of the crime can be critical in preparing a defense. One eminent commentator instructs trial attorneys to visit the scene of the crime. See 32 New Jersey Practice, Criminal Practice and Procedure § 20:1, at 481 (Leonard N. Arnold) (2010-2011 ed.) ("If you have not visited the scene of the crime during the investigation of the case, visit it . . . ."). That commentator observes that a "trial attorney must know what the crime scene . . . looks like" because it will enable "him/her to intelligently interview witnesses, and to prepare both direct and cross examination."

15

Ibid. Indeed, the failure of a defense attorney "to conduct an investigation of the crime scene" can constitute ineffective assistance of counsel. See, e.g., Thomas v. Kuhlman, 255 F. Supp. 2d 99, 109, 112 (E.D.N.Y. 2003) ("[I]f properly armed with the easily discoverable facts concerning the layout of the victim's apartment building, counsel would likely have chosen to highlight the implausibility of the prosecution's theory of the crime.").

A.B.'s request for access to inspect N.A.'s home does not fall within the general scope of the automatic discovery rule because her home is not "within the possession, custody or control of the prosecutor," R. 3:13-3(b)(1)(E). Therefore, he must demonstrate that the inspection is justified. See W.C., supra, 85 N.J. at 228. We now consider the precise burden that a defendant bears when seeking access to a home of an alleged victim that is a crime scene.

C.

This Court has addressed the showing a defendant must make when a discovery demand involves a witness's compulsory viewing of a line-up or a psychological or physical examination of an alleged victim or witness. The evidentiary burden necessarily increases in direct proportion to the nature and extent of the intrusion.

16

A defendant who seeks to compel a witness's attendance at a lineup must show that the identification procedure has a "reasonable likelihood" of having "some probative value" to a "substantial material issue." W.C., supra, 85 N.J. at 226. A greater showing, however, is required if the defendant seeks a psychiatric or physical examination of an alleged victim or witness.

To compel a psychiatric examination of a victim for the purpose of challenging her competency to testify, a defendant must meet a more exacting standard and demonstrate a "'substantial showing of need and justification.'" State v. R.W., 104 N.J. 14, 21 (1986) (quoting State v. Butler, 27 N.J. 560, 602 (1958)). In such a case, a "court must balance the possible emotional trauma, embarrassment, and intimidation to the complainant, particularly an extremely young child, against the likelihood that the examination will produce material, as distinguished from speculative, evidence." Id. at 28.

In cases where the defense seeks a "physical examination [of] child sex-abuse victims," a "substantial showing of need and justification" also must be demonstrated. D.R.H., supra, 127 N.J. at 259 (internal quotation marks omitted) (applying standard to reject defendant's request of gynecological exam of juvenile). More particularly, the defendant must show that the "examination can produce competent evidence that has substantial

17

probative worth," which "could refute or neutralize incriminating evidence or impugn the credibility of prosecution witnesses." Id. at 260-61. In all cases in which intrusive discovery is sought, courts must be careful that the discovery process does not subject witnesses, particularly alleged victims, "to intimidation, harassment, or embarrassment." Id. at 256. Courts must guard against abusive discovery tactics that can have a chilling effect on the readiness of witnesses and victims to come forward and participate in the criminal justice process. Ibid.

D.

Our judicial discovery standards take into account the concerns expressed in both the VRA and CVBR. Our courts understand that in a discovery proceeding "[a] victim of a crime shall be treated with fairness, compassion and respect," N.J. Const. art. I, ¶ 22, and that a witness has the right "[t]o be free from intimidation, harassment or abuse by any person including the defendant or [his attorney]," N.J.S.A. 52:4B-36(c). But the rights of the accused and alleged victims and witnesses are not mutually exclusive. One right does not have to be sacrificed for another. They can and must be harmonized. Thus, the rights reflected in the VRA and CVBR do not diminish those rights possessed by the accused facing a criminal prosecution. See, e.g., State v. Means, 191 N.J. 610, 620

18

(2007) ("The trial court should consider the concerns of the victim or the victim's family, but the court may not impinge on a defendant's constitutional rights."); State v. Timmendequas, 161 N.J. 515, 556 (1999) (noting it is not error to consider victim's family's concerns "provided that the constitutional rights of the defendant are not denied or infringed"); Assem. Comm. Statement to Assem. Concur. Res. No. 85, 204th Leg., 1st Sess. 1 (Oct. 15, 1990) (placing VRA before voters with statement that VRA "is not intended in any way to deny or infringe upon the constitutional rights of any person accused of a crime").

E.

No case in New Jersey has addressed the issue of allowing a defendant to inspect a crime victim's home. In other jurisdictions, courts that have adjudicated this issue have not adopted the more restrictive substantial-need standard proposed by the Attorney General. These courts generally require only a threshold showing of relevance and materiality, consistent with the requirements set forth in W.C. Compare W.C., supra, 85 N.J. at 226 (holding that accused must make showing of "reasonable likelihood" that identification procedure will be of "some probative value" to "substantial material issue"), with State v. Muscari, 807 A.2d 407, 417 (Vt. 2002) (requiring "some showing that the requested intrusion is relevant and material"), State

19

v. Gonsalves, 661 So.2d 1281, 1282 (Fla. Ct. App. 1995) (requiring "good cause . . . for inspection"), Henshaw v. Commonwealth, 451 S.E.2d 415, 420 (Va. Ct. App. 1994) (requiring "prima facie showing of relevance"), People v. Nicholas, 599 N.Y.S.2d 779, 783 (Sup. Ct. 1993) (requiring "prima facie showing . . . [of] relevant [and necessary] material evidence, not already provided"), and Bullen v. Superior Ct., 204 Cal. App. 3d 22, 26 (Ct. App. 1988) (requiring "sufficient 'plausible justification' and 'good cause'").

Significantly, when courts have denied defendants access to photograph or inspect a crime scene, it has generally been because the defendant failed to show sufficient, or any, justification. See, e.g., Muscari, supra, 807 A.2d at 418 (denying inspection because defendant "offered no reason or justification"); Nichols, supra, 599 N.Y.S.2d at 782 (denying defendant's request to photograph inside ex-wife's apartment, where he previously lived, because he made only "speculative showing" and failed to allege that "inspection would yield any information different from that already received from [police] photographs and crime scene reports"); Bullen, supra, 204 Cal. App. 3d at 27 (denying inspection where defendant presented only "conclusional" justification); People v. Poole, 462 N.E.2d 810, 813 (Ill. Ct. App. 1984) (denying defendant's request to take

20

photographs of victim's room to show lighting conditions because such conditions could not reliably be reproduced).

Several of these courts suggested that had the defense made a showing of relevance and need, the inspection would have been permissible.[3]  See Muscari, supra, 807 A.2d at 417 (noting general trend among states to permit inspections on "some showing that the requested intrusion is relevant and material to the defense"); Bullen, supra, 204 Cal. App. 3d at 26 (requiring "defendant to demonstrate sufficient 'plausible justification' and 'good cause'"); Nicholas, supra, 599 N.Y.S.2d at 783 (requiring "prima facie showing" that discovery will yield "relevant material evidence").

In light of New Jersey's discovery precedents, and out-of-state authority, we next turn to the standard that a defendant must satisfy to secure permission to inspect an alleged victim's home that is designated a crime scene.

---

[3] In one case cited by the State, the Oregon Supreme Court denied an inspection of a home on the basis that the trial court, under Oregon law, had no inherent power to issue the order to a non-party.  See State ex rel. Beach v. Norblad, 781 P.2d 349, 350 (Or. 1989) ("Absent party status, counsel has not identified any other basis (and we know of none) under which the . . . trial judge could . . . issue such an order to [the homeowner]." (citing State ex rel. Roach v. Roth, 652 P.2d 779, 780 (Or. 1982) (holding that Oregon courts have "no general power, merely by virtue of conducting a trial, to order persons how to conduct themselves outside the courtroom"))).  Because New Jersey courts, by law, have greater power to order discovery than Oregon courts, the Oregon case is not germane.

V.

We begin by reaffirming that our trial courts are empowered to order discovery beyond that mandated by our court rules when doing so will further the truth-seeking function or ensure the fairness of a trial.  See W.C., supra, 85 N.J. at 221.  In exercising its discretion, a court must weigh the accused's need for a particular species of discovery against the impact the discovery request may have on the privacy and lives of witnesses and alleged victims.

A discovery request by the defense for a psychiatric or gynecological examination of an alleged victim is not routine.  Such requests are rarely made.  Moreover, psychiatric and physical examinations are extraordinary intrusions into an alleged victim's mind and body, and therefore the heightened standard of substantial need is appropriate in such cases.  See D.R.H., supra, 127 N.J. at 258-59; R.W., supra, 104 N.J. at 28 n.3.  Any analysis of substantial need must account for the potential trauma, embarrassment, and anxiety that might be caused by granting such a discovery request.

In contrast, a defense attorney's visit to the scene of the crime is a rather ordinary undertaking, and in some circumstances, such an inspection might constitute a professional obligation.  See Thomas, supra, 255 F. Supp. 2d at 112.  The State generally will have thoroughly investigated a

22

crime scene, securing evidence and taking photographs. Familiarity with a crime scene may be essential for an effective direct or cross-examination of a witness -- and even for presenting exculpatory evidence. For example, the inability of a witness to have observed an event because of the layout of the area can break a case. See id. at 109-10. In many instances, the defense will not be on an equal footing with the prosecution if it is barred from a crime scene to which the prosecutor has access.

Obviously, when a crime scene is the home of a victim, other significant concerns arise. The right to privacy in one's home is a basic right, and all alleged victims of crime have an interest in not revisiting a traumatic event. However, the undeniable reality is that a criminal prosecution will intrude into an alleged victim's privacy. In this case, prosecutor's investigators took pieces of rug and photographed N.A.'s home; the child and her parents were questioned by law enforcement authorities; at a pretrial hearing the mother was subject to extensive questioning on direct and cross-examination about many aspects of the private life of her family; and N.A. and her mother will have to testify at trial.

Participation in the criminal justice process will undoubtedly be a source of inconvenience and anxiety, and will result in some incursion into privacy rights of witnesses. Some

23

of these adverse consequences are the inevitable price that must be paid to ensure the accused receives a fair trial. Nevertheless, let us be clear: victims have a right "[t]o be free from intimidation, harassment or abuse." N.J.S.A. 52:4B-36(c). Any discovery request that has as its objective causing intimidation, harassment, or abuse of an alleged victim is wholly illegitimate and must be denied. We will not sanction the use of the criminal justice system for an impermissible purpose.

However, when the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted. This test is similar to the one adopted in W.C., supra, 85 N.J. at 226 -- a case involving a request for a compulsory identification procedure -- and comports with standards in other jurisdictions. We emphasize that discovery requests based on sheer speculation about what is expected to be gained from an inspection of an alleged victim's home will not suffice. The burden rests with the defendant to show a reasonable basis to believe that a home inspection of limited duration will yield relevant evidence.

24

We add this caveat:  defendants who seek an inspection beyond the first one granted will be held to a heightened standard and will have to demonstrate substantial need, which will include giving articulable reasons why the initial inspection was not adequate for investigative purposes.  In such circumstances, the privacy interests of the alleged victim's family will weigh even more heavily in the balance.  We also recognize that there may be exceptional situations in which the trial court might permit an inspection by defense counsel but deem it necessary to exclude the defendant from participating.  Each case will depend on its unique facts and require the trial court to exercise its sound discretion.

We now turn to the facts of this case to determine whether the family court properly exercised its discretion.

## VI.

A.B. is charged as a juvenile with aggravated sexual assault and endangering the welfare of his six-year-old cousin, N.A.  An adjudication that he committed these offenses will have immediate and long-term dire consequences.  He faces potential incarceration and designation as a sex offender, which will trigger registration and notification obligations.  Therefore, A.B. must have a fair opportunity to defend against these charges.

25

The trial of this case is likely to be a credibility contest between N.A. and A.B. No physical evidence corroborates the charges. N.A. alleges that A.B. coaxed her to perform oral sex in her bedroom on the Fourth of July -- the day of the cookout at her home when four adults apparently were on the patio outside and her mother in the kitchen. She also claims that A.B. improperly touched her genitalia on several occasions. Although A.B. was present in N.A.'s home on the day of the cookout, he has denied ever sexually abusing his cousin. A.B. posits that on that day it was not possible for the acts alleged by N.A. to have occurred undetected by any of the five adults. The defense notes that the photographs provided by the State do not show that N.A.'s bedroom windows look out onto the patio/pool area, that the kitchen is steps away from the bedroom, and that there is a clear view looking into the bedroom from the hallway. A.B.'s attorney asserts that it is essential for him to understand the dimensional layout of the rooms, to view firsthand the sightlines, and to take photographs helpful to the defense. Counsel maintains that he will be disadvantaged because the prosecutor has had the opportunity to view the scene while he has not. A.B.'s counsel has stated that it is his routine practice to visit the scene of the crime and that he would consider himself derelict if he failed to do so.

26

The trial court weighed the competing interests:  the juvenile's need for access to the scene to prepare a defense, and the alleged victim and her family's desire not to suffer the traumatizing effect of the juvenile's presence in their home, with his attorney in tow, "look[ing] for things they can use against [them] in Court."  The family court carefully crafted an order that took into account the parties' concerns.  The court barred the juvenile's parents from participating in the inspection, restricted the inspection to the victim's room and the juvenile's sleeping area, and limited the inspection to no more than thirty minutes.  The court also allowed for an investigator from the Prosecutor's Office to be present during the defense inspection and for the family to "be in another part of the house or outside of the house" during the visit.  N.A. is not required to be present or even know about the visit.

Having thoroughly reviewed the record, we cannot conclude that the family court abused its discretion.  N.A.'s family must comply with the discovery order.[4]

---

[4] We disapprove of the comment in State v. Gomez, 430 N.J. Super. 175, 187 (App. Div. 2013), that court orders can only be directed at the prosecutor's office and not to alleged victims or other witnesses.  There is simply no support for that assertion.  See W.C., supra, 85 N.J. at 225 (stating that court order may be obtained to compel attendance at lineup of alleged victim or other witness); see also State v. Garcia, 195 N.J. 192, 204 (2008) (noting that non-party Hudson County jailor must comply with order to transfer subpoenaed inmate).

27

Last, the entry of the order -- after the parties were given notice of the juvenile's request and a reasonable opportunity to be heard -- does not sanction an unreasonable search under the Fourth Amendment of the United States Constitution, as the State and Attorney General contend. They do not contend that a properly authorized order requiring a compulsory identification procedure or a psychiatric or physical examination violates the Fourth Amendment. They do not explain why a properly authorized order to inspect a home is different in kind for Fourth Amendment purposes. Indeed, a court has the authority to order, if appropriate, a jury to view the scene of a crime. N.J.S.A. 2B:23-16(a) ("At any time during trial the court may order that the jury view the lands, places or personal property in question to understand the evidence better.").

## VII.

For the reasons expressed in this opinion, we affirm the judgment of the Appellate Division and remand to the family court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE ALBIN's opinion. JUDGE CUFF (temporarily assigned) did not participate.

28

SUPREME COURT OF NEW JERSEY

NO.    A-74                      SEPTEMBER TERM 2012

ON APPEAL FROM _____ Appellate Division, Superior Court _____

STATE OF NEW JERSEY

IN THE INTEREST OF

A.B.

DECIDED _____ September 24, 2014 _____
                    Chief Justice Rabner                      PRESIDING
_____
OPINION BY _____ Justice Albin _____
CONCURRING/DISSENTING OPINION BY_____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM/REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | ------------------------ | ----------------------- |
| | 6 | |

1