**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5249-18T4

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

EVERETT E. MOORE,

     Defendant-Respondent.

_____

Argued December 9, 2019 – Decided January 13, 2020

Before Judges Messano, Ostrer and Susswein.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 18-07-0598.

Margaret A. Cipparrone, Senior Assistant Prosecutor, argued the cause for appellant (Charles A. Fiore, Gloucester County Prosecutor, attorney; Margaret A. Cipparrone, on the brief).

Wayne Powell argued the cause for respondent (Wayne Powell LLC, attorneys; Wayne Powell, on the brief).

PER CURIAM

This case arises from a road-rage incident that culminated in a fatal knife attack. Defendant, Everette E. Moore, is charged with first-degree murder. The State appeals from the trial court's interlocutory order that directed the prosecutor to recreate the results of a police officer's analysis of stored data. The officer's search of law enforcement databases identified the vehicle the State alleges was involved in the road-rage incident and ensuing homicide. The officer did not save the computer search results. We have considered the arguments in light of the applicable legal principles and conclude the trial judge did not abuse her discretion when she ordered the State to recreate the computer search results that were not preserved. We therefore affirm the trial court's discovery order.

I.

On March 7, 2018, police responded to a 9-1-1 call reporting a man bleeding from his face. The victim, Joseph Pirri, told police he had been assaulted with a knife during a road-rage incident. Pirri described his attacker as a black male in his early forties who was wearing a gray vest and blue jeans. Pirri also said the attacker was driving a white Ford King Ranch truck with a cream-colored border around the bottom. Pirri was taken to the hospital and later succumbed to his wounds.

A-5249-18T4

The following day, Mantua Township Police Officer Brian Hauss reviewed surveillance footage of the suspect vehicle. After consulting with automotive mechanics, Hauss determined the pickup truck depicted in the surveillance video was a 2010-2014 Ford model F-250 or F-350 based on specific badges that appeared on the truck and the style of the tailgate and front end of the vehicle. Hauss then searched the ProPhoenix Records Management System for 2010-2014 Ford F-250 and F-350 trucks registered in the area. Hauss narrowed the search to the towns of Deptford, Mantua, Pitman, Glassboro, and Clayton—the towns along the suspect vehicle's route of travel. The search produced 100 results.[1] Hauss then manually entered the registrations for those vehicles in the BOSS Automated License Plate Reader system, which displayed stored photographs of some of the vehicles identified in the ProPhoenix database query.

Officer Hauss's diligence bore fruit. He identified one pickup truck that matched the description of the vehicle involved in the incident. The truck that Hauss identified was a 2012 white and tan four-door Ford F-250 with a toolbox in the rear bed. That vehicle was registered to Donna Moore, who resided in

---

[1] The record is not clear whether the search produced 99 or 100 results. Both numbers are referenced in the trial court's discovery order.

Clayton, New Jersey. Hauss discovered the vehicle was previously operated by her husband, defendant, who matched the victim's description of the assailant. Hauss provided this information to his sergeant but did not print or save the results of the computer search. As a result, the electronic record of the data query and results was lost.[2]

On July 18, 2018, defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

The State provided post-indictment discovery at the time of defendant's arraignment. On January 7, 2019, defendant made additional discovery

---

[2] There is no indication in the record before us that the prosecutor's office supervised or otherwise was involved in the computer search that Hauss undertook. Although that circumstance may explain why the computer search results were not preserved, it has no bearing on the State's discovery obligations or the propriety of the discovery order entered by the trial court. See State v. Richardson, 452 N.J. Super. 124, 133 (App. Div. 2017) ("[O]nce 'a case is referred to the prosecutor following arrest by a police officer as the initial process, or on a complaint by a police officer, local law enforcement [becomes] part of the prosecutor's office for discovery purposes.'" (alteration in original) (quoting State v. W.B., 205 N.J. 588, 608 (2011))).

requests.[3]  Specifically, defendant requested the registration numbers for all Ford F-150,[4] F-250, and F-350 trucks obtained from the ProPhoenix system, together with the names and addresses of the registrants.  The State replied this information was not available.  Defendant also requested all the registration information that was entered into the BOSS system.  In reply to this specific request, the State invited defendant to review Office Hauss's report.

Defendant filed a motion to compel production of additional discovery.  At oral argument before the trial court, defense counsel requested registration and owner information for the results of Hauss's search so that he could determine whether any of the vehicles other than defendant's were depicted in the surveillance videos.  Counsel argued, "I'm not prepared to take [Officer Hauss's] word for the fact that only one of the trucks that he had an opportunity to enter into the system necessarily meets the description given by the victim."

The State explained to the trial judge that it attempted to recover the results of Hauss's search, but the computer did not save that data.  On June 11,

---

[3]  We limit our discussion to those discovery requests that are directly relevant to the issues raised in the State's interlocutory appeal.

[4]  Defendant requested the registration numbers for the F-150 model even though Officer's Hauss's computer search did not include that model.  The trial court only ordered a recreated search for F-250 and F-350 models.

2019, Judge M. Christine Allen-Jackson entered an order that, in pertinent part, requires the State to:

> []. Provide the identity of any other driver who was disclosed to have operated or had registered to him or her a vehicle fitting the description supplied by Detectives Riggs and Hauss on or about March 7, 2018[,] by reconducting a search of white Ford F-250 and F-350 trucks on the ProPhoenix and BOSS systems; and determining how many of the ninety-nine (99) trucks from the original list that were owned from 2010-2014 within the jurisdictions of Deptford, Mantua, Pitman, Glassboro and Clayton, County of Gloucester were also owned by the same people in March 2018. . . .; and
>
> []. Provide discovery manually determined by Officer Hauss and no longer in the possession of the State by resurrecting the list of 100 trucks Officer Hauss observed. Furthermore, the State will provide pictures of listed trucks to Defense Counsel for review.

The State contends it should not be required to conduct a new computer search or create documents that do not presently exist. The State also argues it would not be possible to recreate the original search results because the ProPhoenix database will have changed as residents move in and out of the municipal jurisdictions in the search parameters, and as they buy and sell vehicles.

II.

6

We begin our analysis by reviewing the legal principles that apply to this appeal. "The accused in a criminal case is generally 'entitled to broad discovery.'" State ex rel. A.B., 219 N.J. 542, 555 (2014) (quoting State v. D.R.H., 127 N.J. 249, 256 (1992)). As the Court explained in State v. Scoles, "[t]o advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment." 214 N.J. 236, 252 (2013). "Rule 3:13-3(b) grants a defendant automatic access to a wide range of relevant evidence," A.B., 219 N.J. at 555, including "electronically stored information, and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, into reasonably usable form." R. 3:13-3(b)(1)(E).

As the Court noted in A.B., "[i]n addition to the automatic discovery provision of Rule 3:13-3(b), our courts have 'the inherent power to order discovery when justice so requires.'" 219 N.J. at 555 (quoting State ex rel. W.C., 85 N.J. 218, 221 (1981)). The Court added:

> "Whether discovery should be expanded [beyond the automatic discovery provision of Rule 3:13-3(b)] involves exercising judicial discretion . . . [by] balancing the beneficial effects of discovery against its disadvantages." In exercising its discretion, a court should weigh whether the "evidence sought could contribute to an adequate defense of the accused person" and "cannot practicably be obtained from other

sources" . . . . When a defendant seeks discovery outside of the categories permitted by our court rules, he bears the burden of establishing need.

[Ibid. (citations omitted).]

Furthermore, "[w]e accord substantial deference to a trial court's issuance of a discovery order and will not interfere with such an order absent an abuse of discretion." State v. Hernandez, 225 N.J. 451, 461 (2016) (citing A.B., 219 N.J. at 554). Accordingly, we "defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" A.B., 219 N.J. at 554 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

Applying these principles to the case before us, we agree with the trial court that a recreated computer search would contribute to the defense because it might reveal additional vehicles that match the victim's description and the target vehicle in the surveillance footage. That, in turn, would assist defendant in investigating a possible third-party guilt defense. Defendant cannot obtain this information elsewhere. Requiring defendant to rely solely on Hauss's report, moreover, is less helpful because defendant has no way to test whether the report accurately reflects the unsaved computer search results.

In the particular circumstances of this case, moreover, we do not agree with the State's characterization that it was ordered to create a new document. Rather, we think it more apt to characterize the trial court's order as requiring the State to <u>re</u>create search results that police previously generated and used to identify defendant's vehicle. Had the electronic search results been preserved, those results, without question, would have been discoverable, and the State does not argue to the contrary. Furthermore, the State at oral argument before us acknowledged that it was unfortunate that the search results had not been preserved. We agree with that characterization and conclude that the trial court was not powerless to address the unfortunate loss of relevant search results police generated during the early stages of the investigation.

We also recognize, as did Judge Allen-Jackson, that the databases Hauss searched will have changed since he first performed the computer search. That means the recreated search results will not be identical to the results Hauss produced. No one has suggested to us, however, that changes in local vehicle registrations captured in the ProPhoenix database, or in the inventory of photographs stored in the BOSS Automated License Plate Reader system, are so extensive as to render the results of a recreated computer search irrelevant. <u>See</u> <u>R.</u> 3:13-3(b)(1) (discovery includes relevant material); N.J.R.E. 401 ("'Relevant

evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."). While the remedy fashioned by Judge Allen-Jackson is an imperfect solution to the problem caused by the failure to preserve the initial search results, her order is consonant with the quest for truth that undergirds our discovery system.

We emphasize that our ruling is based on the particular circumstances of this case and our deference to the discretion of the trial court in addressing discovery issues. We need not decide whether police are obligated to preserve database search results that lead to the identification of a suspect vehicle, or whether law enforcement's failure to do so constitutes a discovery violation. We hold simply that the trial judge acted within her discretion in ordering the State to recreate the original computer search. This recreated search would not be unduly onerous to the State and might aid the defense by providing information not otherwise available that police used to winnow down the vehicles that might have been involved in the road-rage incident.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                                    A-5249-18T4